Alexander Jarvis v. Commissioner.
Jarvis v. Commissioner
Docket No. 5126.
United States Tax Court
1946 Tax Ct. Memo LEXIS 180; 5 T.C.M. (CCH) 459; T.C.M. (RIA) 46133; May 28, 1946
*180 1. Held, on the facts, that for the year 1940 the business of Alexander Jarvis Company of Manchester, Connecticut, was conducted as a sole proprietorship, and all the net income therefrom is taxable to petitioner, Alexander Jarvis. Held, further, on the facts, that for the year 1941 the business was conducted as a partnership between Alexander Jarvis and his wife, Alice Jarvis, she having in prior years contributed substantial amounts of capital to the business out of her own private savings and she, during the taxable year, having contributed to the control and management of the business and performed vital services for it and the parties having entered into a legal and binding written partnership agreement on or about January 1, 1941, which was in effect throughout the year. Felix Zukaitis, 3 T.C. 814, followed. 2. Held, on the facts, that petitioner's income tax returns filed for the years 1940 and 1941 were not false or fraudulent with intent to evade the tax and none of the deficiencies due for either taxable year is due to fraud with intent to evade tax and the fraud penalties determined by the Commissioner are not sustained. J. N. Welch, Esq., Anthony *181 Brayton, Esq., and Edward J. Keelan, Jr., Esq., 60 State St., Boston, Mass., for the petitioner. J. T. Haslam, Esq., for the respondent. BLACK Memorandum Findings of Fact and Opinion The Commissioner has determined deficiencies in petitioner's income tax, plus 50 percent fraud penalties, as follows: Year
Deficiency
50% Penalty
1940
$10,708.07
$ 5,354.04
1941
23,215.47
11,607.74
The deficiencies for each year are due primarily to the addition to petitioner's net income of one-half of the income of the business of Alexander Jarvis Company which had been reported by petitioner's wife, Alice Jarvis, on her own income tax return which she filed in each of the taxable years. The Commissioner determined that the business of Alexander Jarvis Company was not a partnership but was a sole proprietorship owned by petitioner, Alexander Jarvis. The Commissioner determined the 50 percent fraud penalties because petitioner had not reported all the income of Alexander Jarvis Company upon his income tax returns. The petitioner on his part alleges that the determination of tax and fraud penalties set forth in the notice of deficiency is based upon the *182 following errors: A. In determining that the entire income of the Alexander Jarvis Company - a co-partnership - for the calendar years 1940 and 1941 was taxable to the petitioner. B. In determining that any part of the deficiencies for the calendar years 1940 and 1941 was caused by a false or fraudulent understatement of taxable income or tax by the petitioner, with intent to evade Federal income tax. The Commissioner made other adjustments in petitioner's income tax returns for each of the taxable years which are not contested. Due to these other adjustments petitioner concedes there is a deficiency for 1940 of $772.64 and for 1941 of $2,321.19, but denies liability for any fraud penalty for either year. Findings of Fact The petitioner is Alexander Jarvis, a resident of Manchester, Connecticut, and will be referred to sometimes hereafter as Alexander. He filed his income tax return for each of the taxable years with the Collector of Internal Revenue for the District of Connecticut. The petitioner's returns reported income from a partnership called "Alexander Jarvis Company" in the amount of $22,175.30 for the year 1940 and $29,922.26 for the year 1941. Partnership returns *183 were filed for the calendar years 1940 and 1941 in the name of Alexander Jarvis Company, signed by Alice Jarvis as partner. Alice Jarvis is petitioner's wife and will sometimes hereafter be referred to as Alice. The partnership returns showed distributable partnership profits for 1940 in the amount of $22,175.30 to the petitioner and an equal amount to Alice and of $29,922.26 to the petitioner and an equal amount to Alice for the year 1941. Alexander had been obliged to give up his school education in order to take care of the business of his father who had become ill. His father had horses; he raised tobacco; he also had a wood business and a little sand and gravel. Later on, Alexander started in business for himself in a small way with a pick and shovel, hiring a few horses from his father and selling a little sand and gravel, and digging cellars. In 1927 the petitioner and Alice M. Jarvis were married. At the time of his marriage Alexander's business was comparatively small. All the property he then owned consisted of only two small trucks assessed for $3,900. Before her marriage Alice had accumulated about $6,700 from her earnings working at Cheney Bros. over a period of about *184 ten years. Of this there was about $3,000 in a savings bank; $2,000 in a building and loan association; and $1,700 in cash. After their marriage Alexander and Alice lived with her family about a year. During that year Alice continued to work at Cheney Bros. at $35- $38 a week. Some of that money went into the business. In 1928 Alexander and Alice set up housekeeping in one side of a duplex house that they rented. They used the dining room as an office and ate in the kitchen. About $700 of Alice's savings were used to furnish the house. In addition to her current earnings, Alice turned over to the business practically all of her own money from time to time, whenever the business needed it. There was turned over to and used in the business $2,000 from the savings account; the $2,000 in the building and loan association; and the $1,000 remaining in cash after buying furniture for the house. In all she put into the business over $5,000 of her own money accumulated while she worked for Cheney Bros. From the time the Jarvises set up housekeeping, Alice actively participated in the business. She solicited business. She took care of telephone calls, interviewed people, and took orders and *185 collected bills at the house. She kept an eye out for advertisements of equipment and materials for sale. She conducted negotiations for the purchase of materials. She discussed business matters with Alexander, including plans for the business, whether or not they would take on any particular contract, the buying of equipment, the estimating of contracts, and the hiring and firing of employees. She and petitioner usually talked over the more important business matters and together determined all questions of policy. She did all of these things during the taxable years 1940 and 1941. In 1935 the billhead and letterhead of the business was changed to "Alexander Jarvis Company." The checking account was in the name of "Alexander Jarvis Company." Checks were printed with the drawer named "Alexander Jarvis Company by" with a place for signature. As a result of depositing surplus money from the business in savings accounts, the Jarvises had various accounts in 1937, some standing in the name of Alexander, some in the name of Alice, and still others in the name of Alexander and Alice. They withdrew $10,000 from a savings account in Alice's name, $10,000 from the joint accounts, and $9,025 *186 from an account in the name of Alexander in 1937 and deposited these sums in the business checking account. All of this money was needed and was used in the business in connection with several large contracts with the State of Connecticut. For many years Archie Jarvis, a brother of the petitioner, had been employed in the business. In 1937 he was acting as a foreman and was being paid about $60 a week. He had no financial interest in tye business. Around Christmas time 1939 the petitioner suffered a serious illness. At that time Archie, the brother, called upon the petitioner at his home and demanded that he be given a share in the business. Mrs. Jarvis overhead some of this conversation. This precipitated a heated argument between Mrs. Jarvis and Archie, the brother. Alice immediately took the matter up with the petitioner and asked where she stood. As a result, the petitioner assured his wife that the business had always been theirs and theirs alone, and that Archie had and would get no share in it. The petitioner also agreed to put their understanding about the business in "black and white." In January 1940 when the petitioner was able to get up and around, the Jarvises went *187 to Florida for a vacation and for Alexander to recuperate. In the spring, after their return, Mr. and Mrs. Jarvis consulted their attorney about their respective interests in the business and what to do about it. This attorney had represented and advised them since their marriage and was familiar with their business and the manner in which they had been conducting it. The attorney advised them that under Connecticut law a husband and wife could be partners, that an oral partnership was as binding as a written one, but that they should have it in writing. The Jarvises had employed as their auditor the brother of their attorney from 1935 until 1942 when the auditor entered the military service. Following discussions between the Jarvises and their attorney and their auditor, the auditor, around October 1940, started setting up the books for the business on a partnership basis as of January 1, 1940. The date January 1, 1940, was selected by the attorney as the date of the formal recognition of the partnership because the attorney felt that if there were ever any doubt about the Jarvises being partners prior to their argument with Archie, there could be no doubt as of that time. Around *188 Christmas 1940 as the result of a question raised by the auditor, Alexander, his attorney and his auditor consulted a large accounting firm in Boston in regard to the proper tax returns and the partnership agreement. These accountants advised the Jarvises and their lawyer and auditor to reduce the partnership agreement to writing, that a partnership tax return was required, and concerning some details to be incorporated in the contract. The Jarvises accepted this advice and acted upon it. The partnership contract was drawn up by the attorney and after revision by the accountants was executed. The partnership agreement bears date of December 28, 1940, but it was actually signed by the parties a few days thereafter, on or about January 1, 1941. It contains, among other things, the following: FIRST: The partnership shall be for the purpose of carrying on a general construction business, including the building of houses, highways, roads, bridges, streets, and any and all other forms of general contracting work, including the sale of sand, gravel, cement and other materials, and shall continue until terminated under the provisions of this agreement. SECOND: Said partnership shall be *189 conducted and carried on under the firm name and style of THE ALEXANDER JARVIS COMPANY, and the place of business shall be at Manchester, Connecticut, and at such other place or places as the partners may hereafter determine. THIRD: The capital of said partnership shall consist of One Hundred Thousand ($100,000.00) Dollars, to be contributed as follows: Sixty Thousand ($60,000.00) Dollars in the form of cash, machinery, motors, trucks, vehicles, equipment, tools, and other implements, all of which will more fully appear by reference to the books of the partnership by Alexander Jarvis, and Forty Thousand ($40,000.00) Dollars in cash by Alice Jarvis. The interest and share of each partner in the business shall be shown upon the books of the partnership, and it is understood and agreed that neither partner shall withdraw from the firm any amount which will reduce his or her capital account below the sum of Twenty-five Thousand ($25,000.00) Dollars. Any partner whose capital account is in excess of Twenty-five Thousand ($25,000.00) Dollars may withdraw such excess amount at any time after having given thirty (30) days written notice of his or her intention to do so. Each party is entitled *190 to draw out from the profits of the operation of said business, for his or her own separate account, a sum not exceeding Fifty ($50.00) Dollars per week, while the said partnership continues, but with the condition, and upon the understanding that all such sums in the aggregate for the year shall not exceed his or her share of the profits of the said partnership, and if either party shall draw an amount in excess of his or her share of said profits, he shall repay the same at the close of the year. FOURTH: The profits arising out of the conduct of the business shall be divided between the partners equally, share and share alike, and the losses shall be borne in the same proportion. FIFTH: Each of the parties hereto shall diligently employ himself in the business of said partnership and be faithful to the other in all its transactions relating to the same, and give, whenever required, a true account of all business transactions arising out of or in connection with the conduct of the said partnership. It is understood that the said Alexander Jarvis is also engaged in the management, operation. and development of certain real estate holdings, and that such business requires his attention, *191 and it is expressly understood and agreed that he shall be permitted and allowed to conduct such operations without impairing in any way his obligations under this contract, nor shall he be called upon in any manner to account for any profits which he shall make in connection with the operation, management, and development of said real estate. The books of the business were set up as of January 1, 1940, on a partnership basis and on the cash basis. Of the $100,000 capital, the books showed that Alexander contributed $60,000 made up of machinery and equipment of $56,376.49 and an account receivable due from him to the business in the amount of $3,623.51. The books showed a capital contribution by Alice of $40,000 made up of $25,226.50 of cash and $14,774.50 an account receivable due from her to the business. In December 1941 the sum of $31,293.50 was withdrawn from 11 savings bank accounts and placed in the business. Of that amount there was withdrawn on December 4, 1941, a total of $20,456.92 of which $3,632.65 was withdrawn from a savings bank account in the name of Alice Jarvis, $10,824.27 was withdrawn from two savings bank accounts in the joint names of Alexander and Alice *192 Jarvis, and $6,000 was withdrawn from a savings bank account the name of which is not of record. On December 10, 1941, there was withdrawn from seven savings bank accounts the sum of $10,836.58 of which $2,220.88 was withdrawn from two accounts in the name of Alice Jarvis, $3,233.62 was withdrawn from two accounts in the joint names of Alice Jarvis and Alexander Jarvis, $3,232.75 was withdrawn from an account in the joint names of Alexander and Alice Jarvis, and $2,149.34 was withdrawn from two joint accounts the names of which are not of record. Contracts with the State of Connecticut were obtained by the petitioner in 1940 under competitive bidding. One such contract for work to be done in the Town of Colchester was dated April 11, 1940; another for work to be done in the Town of Sprague was dated October 25, 1940; and another for work to be done in the Town of Granby was dated October 29, 1940. Each of these contracts was executed by having "Alexander Jarvis Company, Contractor," in typewriting, and signed by the petitioner as "by Alexander Jarvis, Owner." A contract for work to be done in the Town of Hebron was executed April 5, 1940, by having "Alexander Jarvis Company" in typewriting *193 and signed by the petitioner as "Alexander Jarvis, Owner." A contract for work to be done in the Town of Sprague was executed May 17, 1940, by having "Alexander Jarvis, Contractor" on typewriting and signed by the petitioner as "Alexander Jarvis, Owner." The business profits for 1940 were divided equally between Alexander and Alice and credited to their separate capital accounts. As a result, the account receivable due from Alice was reduced to about $11,093.85 as of December 31, 1940. The business profits for 1941 were again divided equally between Alexander and Alice and credited to their separate capital accounts. As a result, the account receivable due from Alice to the business was eliminated entirely by December 31, 1941. In connection with the tax returns for 1941, Alexander again consulted their attorney and auditor and with them the accounting firm in Boston, and another lawyer, E. J. Keelan. As a result, the tax returns were again filed on the partnership basis with a notation on the return saying: The 1940 tax return is now under review by the Internal Revenue Department and the 1941 return herewith shows income and deductions on the same basis as the 1940 return, *194 and it is not intended to evade any tax liability by filing the 1941 return on the same basis as the 1940 return. Alexander and Alice each reported one-half of the income shown on the partnership return filed by Alexander Jarvis Company for the years 1940 and 1941 and paid tax thereon. Alice made cash withdrawals from the partnership funds in 1940 amounting to $3,450 and in 1941 amounting to approximately $1,260. In 1940 and 1941 Alice's income from rent and mortgage interest from property which she owned outside of the partnership business and in her own name was deposited in the business checking account and recorded in the partnership books in the "Alice Jarvis Capital Account." She did not have a separate checking account. Both Alexander and Alice were unlearned in bookkeeping and tax matters. They relied wholly upon advice of attorneys, auditors, and accountants in connection with bookkeeping, accounting and preparation of tax returns. Petitioner's income tax returns filed for the years 1940 and 1941 were not false or fraudulent with intent to evade tax and none of the deficiencies due for either year by petitioner is due to fraud with intent to evade tax. Opinion
*195 BLACK, Judge: The first question we have to decide in this proceeding is whether the business of Alexander Jarvis Company during the calendar years 1940 and 1941 was a sole proprietorship owned by petitioner, Alexander Jarvis, as the Commissioner has determined or whether it was a copartnership owned and operated by petitioner and his wife, Alice, with an equal division of profits between them as petitioner contends. There is no issue as to the amount of net profits of Alexander Jarvis Company in either of the taxable years. That is agreed upon by the parties. The applicable sections of the Internal Revenue Code are printed in the margin. [1]
*196 The petitioner concedes that there was no written partnership agreement between the parties for the year 1940. He argues, however, that there was an implied partnership or joint venture between them for that year and that it should be recognized for income tax purposes. Petitioner cites in support of his contention, . In that case the Supreme Court of Connecticut, after discussing the facts, among other things said: It thus appears that their relation was what at common law was looked upon as a sort of informal partnership. It would probably still be so considered in the British Dominion, but in this country it is commonly defined as a joint enterprise or adventure. While the distinction between a partnership and a joint adventure is often very slight, it is commonly considered that, as respects the character of the enterprise, a partnership is formed for the purpose of carrying on a general business of one sort or another, and a joint adventure is more commonly limited to a single transaction or course of transactions. 33 Corpus Juris, p. 842. "To constitute a joint adventure two parties must combine their property, *197 money, efforts, skill or knowledge in some common undertaking." The court then went on to find that there was a joint venture between husband and wife in the Dolan case and that they were entitled to share equally in the gains. It is true, of course, that the Federal statute quoted in the margin is a very broad one. See our discussion in , promulgated May 7, 1946. Under the term "partnership" as used in that statute is included not only a partnership as it is known at common law, but, as well, a syndicate, group, pool, joint venture, or other unincorporated organization which carries on any business, financial operation or venture, and which is not, within the meaning of the Code, a trust, estate or corporation. See Regulations 111, Sec. 29.3797-4. While it is clear that petitioner and his wife were not operating the business of Alexander Jarvis Company under any formal partnership agreement during the year 1940, there is considerable evidence in the record which supports petitioner's contention that they were operating the business as an implied partnership or joint adventure. However, there is also considerable evidence in the record *198 which we construe as being contrary to such a contention. We must weigh these facts, those which support petitioner and those which do not support him, and come to a decision, bearing in mind that respondent's determination that there was no partnership is presumed to be correct and that the burden of proof is on petitioner to show that respondent's determination is wrong. A study of the record in the instant case, we think, shows striking similarities to the facts present in . In that case Mrs. Zukaitis had been closely associated with her husband in his business for a good many years. She had placed some of her private savings in it and she worked in the business. It was not, however, until February 14, 1939, that she and her husband entered into a formal written partnership agreement. On the facts we held that the partnership between Felix Zukaitis and his wife was effective from the agreement of February 14, 1939, and such partnership agreement had no retroactive effect. We think we must so hold in the instant case. By thus holding we do not mean to say that there cannot be a partnership or joint venture by oral or implied agreement. We simply *199 mean to say that, in the instant case, we do not believe we would be justified in so holding under all the facts. These facts show, for example, that in 1940 a number of contracts with the State of Connecticut were signed "Alexander Jarvis Company, By Alexander Jarvis, Owner." Of course, such evidence is not conclusive against petitioner, but it certainly must be considered in deciding whether petitioner and his wife were actually conducting their business as a partnership or joint venture in 1940. Another strong circumstance against petitioner is that the books and accounts of the business were kept in prior years to show a sole proprietorship in petitioner and this was also true for most of the year 1940. It was not until in the fall of 1940 that petitioner's accountant set up the books on a partnership basis as of January 1, 1940. It goes without saying that a business cannot be run as a sole proprietorship for most of a given year and then have the year's income converted into a partnership basis by making book entires "as of" January 1 of that given year. Book entries are not conclusive, of course. They are only evidentiary. . *200 However, in the instant case the fact that the books of the business were kept as a sole proprietorship during most of the year 1940 and were only set up on a partnership basis by the accountant in the fall of 1940, is a strong circumstance against petitioner's contention that we should give recognition to the partnership for the year 1940. We have endeavored in our findings of fact to make a full disclosure of the facts, both those which favor petitioner and those which are against him. After a careful consideration of these facts, we hold against petitioner for the year 1940 on authority of Under authority of that case, however, we think petitioner must be sustained for the year 1941. In the instant case petitioner and his wife entered into a formal partnership agreement toward the close of the year 1940 and it was reduced to writing in 1940. This partnership agreement is dated December 28, 1940. It was not actually signed on that date but was signed a few days thereafter. It was signed on or about January 1, 1941 and was effective throughout the year 1941. Mrs. Jarvis had brought more than $5,000 of her individual savings into the business in *201 the early days of the business when it did not have much capital and it had remained there, not as a loan but as a part of the business. Her capital contribution, out of her own individual funds, to the business in a substantial amount is clear. Also that she served the business in important capacities in the year 1941 is clear. We know of no reason why we should not give full recognition to the partnership agreement which undoubtedly existed between petitioner and his wife for the year 1941. See , decided May 14, 1946. In the Zukaitis case, in giving full recognition to the partnership existing between the taxpayer and his wife from February 14, 1939, we said: We think that the evidence supports petitioner's contentions as to the existence of the partnership from February 14, 1939. There can be no doubt that petitioner and his wife intended by their agreement of February 14, 1939, to join in the operation of the business of the West Side Beer Co. as equal partners and that each should be entitled to one-half of the profits of the business from the date of the execution of the partnership agreement. Petitioner's *202 wife had taken an active part in the business since its inception in 1931. From a small beginning in that year she and petitioner, working together and with their combined capital, had built up a business of considerable size by 1939. For several years petitioner's wife worked long hours for comparatively small pay. Her duties and responsibilities increased with the growth of the business. During the taxable years 1939 and 1940 and for several prior years she had complete management of the office and performed various important duties. She managed the office while petitioner spent most of his time on outside matters. The evidence shows, we think, that the success of the business was due as much to her efforts as to those of petitioner. Petitioner's wife testified, and her testimony is uncontradicted, that she furnished $1,500 of the capital upon which the business was begun in 1931. She thus had a stake in the business from the beginning, apart from her interest as an employee. In , the court stressed the importance of the fact that the wives there furnished the original capital, saying in its opinion: * * * Though the present *203 case is one where the services of Humphreys and Day contributed to the earnings of the firm, the capital furnished by their wives was what started the business, and this and the additional capital which they later contributed helped to furnish the moneys necessary to conduct it. * * * So far as we can see, there is nothing in the Supreme Court's recent decisions in , and , both decided February 25, 1946, which overrules our decision in See , promulgated May 8, 1946, and , promulgated April 9, 1946, both of which cited with approval the Zukaitis case and were decided since the Supreme Court's decisions in the Tower and Lusthaus cases. As to the year 1941, we sustain the petitioner. There remains to decide only the issue of fraud penalties. It goes without saying, of course, that the burden of proof is on the Commissioner to sustain his imposition of fraud penalties. This he has not done. The Commissioner offered no evidence at the hearings on the fraud issue. *204 He cross-examined petitioner and his wife when they were testifying as witnesses but brought out nothing so far as we can see which in any way sustains his imposition of fraud penalties. The court in discussing the statute providing for penalty of 50 percent additional because of "fraud", in , says: * * * The fraud meant is actual, intentional wrongdoing, and the intent required is the specific purpose to evade a tax believed to be owing. Mere negligence does not establish either. * * * This case was followed by us in a supplemental opinion in . Certainly there can be no fraud penalties for 1941 because we have found in petitioner's favor on the main issue as to that year. As to 1940 while we have found against petitioner on the partnership issue, there is nothing to indicate that petitioner was guilty of fraud in filing his income tax return on a partnership basis. He did so after consulting reputable legal counsel and after having been advised that he was entitled to return the income of Alexander Jarvis Company for 1940 on a partnership basis. Full disclosure of the income *205 of Alexander Jarvis Company was made on a partnership return filed for that year with the Commissioner and petitioner returned one-half of the income which was shown as being distributable to him on the partnership return. We find no evidence whatever in the record which would sustain a finding that petitioner filed his income tax return for 1940 fraudulently with intent to evade tax. The Commissioner's imposition of fraud penalties is not sustained. Decision will be entered under Rule 50. Footnotes
1. SEC. 3797. DEFINITIONS. (a) When used in this title, where not otherwise distinctly expressed or manifestly incompatible with the intent thereof - * * * * *
(2) Partnership and Partner. - The term "partnership" includes a syndicate, group, pool, joint venture, or other unincorporated organization, through or by means of which any business, financial operation, or venture is carried on, and which is not, within the meaning of this title, a trust or estate or a corporation; and the term "partner" includes a member in such a syndicate, group, pool, joint venture, or organization. SEC. 187. PARTNERSHIP RETURNS. Every partnership shall make a return for each taxable year, stating specifically the items of its gross income and the deductions allowed by this chapter and such other information for the purpose of carrying out the provisions of this chapter as the Commissioner with the approval of the Secretary may by regulations prescribe, and shall include in the return the names and addresses of the individuals who would be entitled to share in the net income if distributed and the amount of the distributive share of each individual. The return shall be sworn to by any one of the partners.↩